# The Riverton Ferry Co., Appellant, *v.* The McKeesport and Duquesne Bridge Co.

*Equity—Appeals—Presumption as to master's finding of fact.*

Where a large mass of testimony was taken before the master and scrutinized by him, and his findings of fact and law under the testimony affirmed by the court below, after the court's reëxamination of the testimony the appellate court, finding no error in the conclusions of law, must presume that the evidence fully warranted the finding of every matter of fact, and without the testimony to determine whether there was error or not will affirm on the report of the master and the decree of the court below.

*Equity—Interference with franchise—Right to damages.*

Where there is a direct interference with a right exercised by one party under a grant from the state by the holder of a subsequent grant from the same source without leave of the injured party or without tender of compensation, the plaintiff is entitled in equity to a decree for the damage sustained thereby.

*Damages—Measure of damages—Interference of bridge and ferry.*

Where a bridge company erects a bridge which crosses the line upon which a ferry was operated by a ferry company, under its charter, in such manner that in the ordinary navigation of the boat its passage across the river would be obstructed by at least two of the river piers, the ferry company is entitled to damages; but the diversion of traffic being the inevitable result of business competition and improved facilities of public travel, does not entitle the plaintiff to compensation, it being a damage without legal injury. There being no evidence of legal damages a decree was awarded for nominal damages and costs.

588        FERRY CO., Appellant, *v.* BRIDGE CO.

Statement of Facts—Master's Report.        [1 Super. Ct.

Argued, April 6, 1896.   Appeal, No. 49, April T., 1896, by plaintiff, from the decree of C. P. No. 2, Allegheny Co., Oct. T., 1890, No. 356, in favor of the plaintiff in the sum of $6\frac{1}{4}$ cts. and costs of suit.   Before RICE, P. J., WILLARD, WICK-HAM, BEAVER, REEDER, ORLADY and SMITH, JJ.   Affirmed.

Bill for an injunction to restrain defendant from erecting a bridge and requiring it to remove obstructions and shore piers of a bridge then being erected, for damages sustained and for general relief.

The case came up on bill and answer and the report of S. C. McCandless, the master to whom the case was referred.

Exceptions to the master's report were dismissed and the report of the master confirmed.

The facts sufficiently appear from the report of the master, which is as follows:

To the Honorable the Judges of the said Court:

The plaintiff company was formed and incorporated by letters patent, dated May 23, 1883, for the purpose of the establishment and maintenance of a ferry across the Monongahela river, in this county, "from a point at or near the foot of Riverton street in the borough of McKeesport, to a point at or near the mouth of the run opposite," and pursuant thereto did operate a ferry over said route until the latter part of June, 1890, when, on account of the interference hereinafter detailed, it was operated, with difficulty, on a new line, and upon the completion of defendant's bridge discontinued.

The charter of the defendant company, as quoted in its answer, authorized " the erection, construction and maintaining a bridge from a point at the foot of Riverton street, at the Monongahela river in McKeesport to a point on the opposite side of said river, " etc.

At the time the bill in this case was filed, the construction of the bridge had begun and the relief sought by the plaintiff was : an injunction restraining defendant from the erection of the bridge upon the proposed line and between the points mentioned in its charter, and from operating and maintaining a bridge within three thousand feet of said ferry ; that defendant be required to remove the obstructions and shore piers then being erected, and to pay the plaintiff damages, etc.

The record of the case does not show that the question of a preliminary injunction was considered by the court, and the prohibitory limit of three thousand feet is no longer an element in the case: Bridgewater Ferry Co. v. Sharon Bridge Co., 145 Pa. 404.

It is not to be supposed that, in any phase of this case, the court will decree any change to be made in the present situation of the bridge, nor, the matter in controversy being reduced to a question of damages, that the court will, on that account, turn the plaintiff over to seek its remedy in an action at law, but, it is assumed that, if damages be found, compensation will be decreed directly: Masson's Appeal, 70 Pa. 26.

As suggested by the opinion in the case of Ferry Co. v. Bridge Co., supra, the diversion of traffic, as " the inevitable result of business competition and improved facilities of public travel," does not entitle the plaintiff to compensation, it being a damage without legal injury: Shrunk v. Schuykill Navigation Co., 14 S. & R. 83; Pittsburg & Lake Erie R. R. Co. v. Jones, 111 Pa. 213.

Therefore, the questions to be considered are—whether the defendant has appropriated the plaintiff's landings and interfered with the line upon which its ferryboat was propelled across the river, and, if so, what immediate injury the plaintiff has sustained in consequence thereof?

This ferry was operated by skiff and flatboat. The flatboat is described by the ferryman who operated it as being " sixty feet long besides aprons and eleven feet nine inches wide, " and " ordinarily it would hold three two-horse teams." In its passage across the river, it was held against the current and propelled by means of a wire rope, running lengthwise through pulleys attached to the boat on the up-river side, along which rope the boat was drawn by hand.

The bridge has five piers, two on land and three in the water, the distance between the shore piers being about one thousand one hundred feet. For the purpose of this inquiry that distance may be considered the width of the river.

At this point the course of the river is from west to east with Riverton street running south, at right angles from the river, and it is conceded that the rope was anchored up the river from the bridge.

It is important to locate, as. near as possible, the landing places of the boat prior to the alleged interference.    With reference thereto the testimony is conflicting, but this may be accounted for by the change in the location of the line before mentioned.

. Dominick Lindenthal, engineer and superintendent of construction of the bridge, from actual measurement, locates the landing on the Mifflin township side at seventy feet above the center line of the bridge, and forty-eight feet above the upper edge of the pier, and, as that is a fair average of the distance according to the recollection of the other witnesses, it is taken as conclusive.

To prove the location of the landing on the McKeesport side the plaintiff produces Peter Steiner, an old resident in the neighborhood, Alonzo Inskeep, in the sawmill and lumber business on Riverton street, and Charles H. Delo, the ferryman of this ferry for nearly four years prior and up to the time of its abandonment.    This location is fixed by Steiner to have been opposite Riverton street; by Inskeep, on the Guice property adjoining the said street near or about the western line of the bridge; and by Delo, partly on the street and partly on the Guice property, and the last named, referring to the pier on this side, says "it took the landing from the ferry company" (pages 3, 10, 19 and 21 of the testimony).

On account of the evident familiarity of the witnesses Inskeep and Delo with this landing, their testimony on the subject is impressive, and is not irreconcilable with the large mass of testimony given from recollection by defendant's witnesses, who had frequently used this ferry or had been engaged about the construction of the said bridge, among the number Messrs. Lindenthal and Laub, the engineers.    The average distance of the ferry landing above Riverton street, as designated by defendant's witnesses, is calculated at thirty-eight feet.    By the testimony of T. L. White, president of the defendant company (page 26) and that of Mr. Lindenthal, the engineer (page 57), and by exhibits B & C, pier No. 1 is more than half on the Guice property and the remainder on the street.    Mr. Delo, the ferryman, testifies (page 187) that the rope was fastened to a roller between two willow trees about eighteen feet on a diagonal line and five or six feet on a straight line drawn from

the pier of the bridge to the line on which the ferry was operated. As before mentioned, the wire rope was on a line with the upper side of the ferryboat and, therefore, the lower side of the boat would be at least the distance of its own width—eleven feet, nine inches—nearer the bridge than the line itself.

A careful consideration of all the evidence on this point leads to the conclusion, and I find as a fact, that the ferryboat landing on the McKeesport side was at or very near the place now occupied by the up-river edge of pier No. 1.

Having found as above, would it be possible to operate this ferry successfully on its original line ?

With reference to this question, the same diversity in the testimony, from observation and opinion, exists, as in the testimony with regard to the location of the landings, and this may likewise be accounted for by the change made in the moorings of the wire rope and, in addition, by the idea on the part of some of the witnesses that, in crossing the river, there would be no necessary deviation from a straight line.

If I could adopt this idea, the possibility of a passage above the piers, by the old route, might be entertained.

But there is evidence in the case to show (page 20) that about the latter part of June, 1890, the line was moved up the river eighty feet or more on each side (page 192) ; that the rope was slack enough to sink " right after the end of the boat," and, necessarily so, in order to avoid contact with other craft navigating the river ; by expert testimony (page 203), that ferries of this kind must be operated by means of a slack line ; and, as illustrated by exhibit D, produced in connection with the testimony of the expert witness (page 200), the sag of the line caused by the current of the river or the wind would be sufficient to carry the boat below the position occupied by the river piers, presuming the rope to be fastened at the points indicated by my previous finding in respect to the landings.

Such being the case, the conclusion follows, that the bridge crosses the line upon which the ferry was operated under its charter and that in the ordinary navigation of the boat its passage across the river would be obstructed by, at least, two of the river piers.

We have here a case of direct interference with a right exercised by a party under a grant from the state, by the holder of

a subsequent grant from the same source, without leave of the injured party or even the tender of compensation (Const. Pa. art. 16), and I find that the plaintiff is entitled to a decree for the damage sustained thereby.

Excluding the proof (page 12) of the earnings of the ferry, as inapplicable thereto, because the loss of the same is rather "the inevitable result of business competition and improved facilities of travel" than of the direct interference, there is no evidence to show the amount of the damage recoverable in this case.

Therefore, I find and report that the plaintiff has sustained damage amounting to six and a fourth cents and is entitled to recover the same, with costs, from the defendant, and I recommend that a decree be entered in accordance with this finding.

### DECREE OF COURT.

And now, November 23, 1895, this cause having come on to be heard on bill, answer and testimony, report of master and exceptions thereto, and having been argued by counsel of respective parties, and fully considered by the court, it is ordered, adjudged and decreed by the court that the exceptions filed by both the parties to the master's report be dismissed and the master's report be confirmed absolutely, and that the defendant pay the plaintiff the sum of six and one-fourth cents and costs of suit, including a master's fee which is fixed at $500.

*Errors assigned* were, (1) dismissing the bill; (2) the decree of the court; (3–5) refusing injunction; (6) ruling as a matter of law that the matter in controversy is reduced to a question of damages; (7–9) excluding proof of the earnings of the ferry as inapplicable as the measure of plaintiff's damages; (10) in reporting there is no evidence showing the amount of damages recoverable in this case; (11, 12) awarding nominal damages and costs.

*David S. McCann,* for appellant.—The appellant was entitled to damages for the taking of its franchise under sec. 8, art. 16 of the constitution of Penna., citing on this point Pittsburg Junction R. R. Co.'s Appeal, 122 Pa. 529; Penna. R. R. Co.'s Appeal, 93 Pa. 150; Pennsylvania Railroad Co.'s App., 115

Pa. 517; Sharon Railway Co.'s App., 122 Pa. 533; Stormfeltz v. Manor Turnpike Co., 13 Pa. 555; Cake v. P. & E. R. R. Co., 87 Pa. 307; Tyrone School District's App., 22 W. N. C. 513. The defendant company being the trespasser the plaintiff cannot be held for delay or laches: Groff's Appeal, 128 Pa. 621. The question is simply one of invasion of rights: Pa. R. R. Co.'s Appeal, 115 Pa. 529; Com. v. Railroad, 24 Pa. 159; Packer v. Railroad, 19 Pa. 220; Scheetz's App., 35 Pa. 88; Stewart's App., 56 Pa. 422; Bitting's App., 105 Pa. 517; Commonwealth v. R. R. Co., 27 Pa. 339; Harvey v. R. R. Co., 47 Pa. 436. On the question of damages; this is not a question of mere competition, but an absolute appropriation and an actual deprivation of vested rights. Therefore the cases of Shrunk v. Navigation Co., 14 S. & R. 83, and Railroad Co. v. Jones, 111 Pa. 213, have no application. The cases seem to decide that the right to an injunction must first be established and then an account of the damages sustained to that time follow as an incident to the injunction: Walters v. McElroy, 151 Pa. 558; Allison's Appeal, 77 Pa. 221; Souder's Appeal, 57 Pa. 498. The plaintiff was entitled to substantial damages; Montgomery County v. Bridge Co., 110 Pa. 59; Navagation Co. v. U. S., 148 U. S. 328.

*James Fitzsimmons*, for appellee.—The question as to necessity of landings for a bridge company is clearly settled in Railroad v. Jones, 111 Pa. 204. The limitation of three thousand feet as between ferry companies or a ferry company and a bridge company is repealed: Act of April 17, 1876, P. L. 30; Ferry Co.'s Appeal, 3 Pennypacker, 32. And it is doubted whether it ever had any application as between bridge companies and ferry companies: Ferry Co. v. Sharon Bridge Co., 145 Pa. 404.

OPINION BY WILLARD, J., May 11, 1896:

The appellant in his brief of argument states that this case is practically resolved into the following propositions of law: 1st. Will a court of equity permit the defendant under its charter to usurp the franchises of the plaintiff and actually appropriate its ferry without any compensation tendered or secured?

2d. Does the rule as to enjoining irreparable injuries only

have any application to corporate acts entirely without authority, for which there is no adequate damage at law?

3d. Where an injunction is applied for under such circumstances, can damages alone be decreed? Or in case the injunction is refused will not the suitor be remitted to his action at law?

These interrogatories, as abstract questions, might be answered, but as each case depends upon its own circumstances and facts (of which, as an appellate court, we have a right to be fully informed), we do not feel called upon or authorized to answer these categorical questions with the light before us. We have the allegations and denials of the appellee and appellant, but we are not furnished with the evidence in the case so as to examine it in connection with the report of the master. We know however that a large mass of testimony was taken before the master, all of which was by him scrutinized, and that his findings of fact and law under the testimony were submitted to an able judge in the court below, who after a careful re-examination of the testimony affirmed the master's report and entered the decree by the master recommended. It is fair for us to presume that the evidence fully warranted the finding of every matter of fact contained in his report, and without the testimony before us for examination to determine whether he erred or not, our duty is plain to affirm this case upon the report of the master and the approval of the court below of his report.

The specifications of error are overruled, the decree is affirmed and the appeal dismissed at the cost of the appellant.